INZER, Justice:
This is an appeal by South Mississippi Electric Power Association and four of its member associations from a decree of the Chancery Court of the First Judicial District of Hinds County, wherein that court affirmed in part, reversed in part and remanded an order of the Mississippi Public Service Commission which had granted to appellant, South Mississippi Electric Power Association, an amended certificate to construct enlarged facilities for supplying four of its member associations with wholesale electricity.
This is the third appearance of this case before this Court. Its history and the description of the parties involved are set out in Mississippi Power Company v. South Mississippi Electric Power Association, 254 Miss. 754, 183 So. 163 (1966), wherein we affirmed an order of the Mississippi Public Service Commission granting to appellant a certificate of public convenience and necessity to build facilities to generate and supply wholesale electricity to four of its member associations. This certificate was granted on March 7, 1963, as a result of an application filed with the commission on March 31, 1960. Appellees appealed from that order of the commission and obtained a “stay order” which prevented appellant from beginning .the construction authorized by the certificate. On July 20, 1965, while the former appeal was pending, appellant filed with the commission a petition to amend its certificate. It asked to enlarge the capacity of its system to properly meet the increased supply demands of the members it was authorized to serve. After this application was filed, appellees filed a plea in bar in this Court setting up that the application was an admission that the facilities proposed and authorized for construction were inadequate and thus rendered the appeal moot. We overruled the plea in bar.
The petition to amend alleged that the delay incident to appeals necessitated enlarging the system. It was alleged that inasmuch as the delay had been suffered there were changes that could be made in the generating facilities for the purpose of efficiency and economy. It asked that its certificate be amended to authorize it to install three fifty megawatt units in its generating station at Moselle and one fourteen megawatt unit at Benndale on the periphery of the system, rather than the three twenty-two megawatt units originally proposed. It also requested that the transmission system that it was authorized to build be altered so as to enable it to construct about 800 miles of 60KV transmission lines instead of the 392.6 miles originally proposed. The petition alleged that this increase in mileage was mostly due to the closing of loops in the lines as originally proposed. It was also requested that additional delivery points be established in order that it might properly supply electricity to the member associations it had heretofore been authorized to serve.
*829 Appellees protested the granting of the amended certificate and contended among other things that the facilities and generating plant described in the petition to amend was not a modification of the facilities and plant authorized by the order of March 7, 1963, but instead was a new and different plant and that it was in effect an original application and an abandonment of the certificate granted. As a consequence thereof appellees argue that appellant was required by the Public Utility Act of 1956 to prove, as it did in the original petition, that public convenience and necessity require construction of any facilities by appellant. Singing River, Dixie, Southern Pine and Pearl River Valley electric power associations filed a petition to intervene and they were allowed to do so. They joined in the request that the amended application be granted. The commission confined the issue to be tried on the amended application to the question of whether public convenience and necessity required the construction of the enlarged system rather than the system originally authorized. It rejected the evidence offered by appellees designed to show that public convenience and necessity did not require the construction of any facilities by the appellant. It also refused to allow appellees to cross examine appellant’s witnesses on this issue. The commission held that the testimony offered was immaterial to the issue before it at that time. Appellees were allowed to proffer the evidence rejected and it is in the record before us. The hearing was extended over a period of several weeks and resulted in a rather lengthy record, which we have carefully reviewed.
On January 4,1967, the commission entered an order sustaining the petition and granted an amended certificate authorizing appellant to construct the enlarged system. The order of the commission deals with all the questions involved in this appeal but due to its length we will only set out herein such portions as we deem appropriate.
The commission found from the evidence that:
31. From all of the evidence, the Commission is of the opinion and finds that the granting of an order herein amending the certificate of public convenience and necessity heretofore granted to Petitioner by the Order of March 7, 1963, in manner and form as sought by the Petition to Amend would materially benefit the Petitioner, the four corporate members of Petitioner to be supplied with power at wholesale by Petitioner and that segment of the public served by said corporate members of Petitioner; this would be particularly true in that Petitioner would thereby be enabled to build its system up to the capacity presently required in a more orderly way with a substantially smaller capital investment and would obtain a more efficient operation than would be the case if it approached the problem by building the system as originally certificated and making additions thereto.
32. On the whole record therein, the Commission is of the opinion and finds that the Petitioner has sustained its Petition to Amend its certificate of public convenience and necessity heretofore granted on March 7, 1963, by the evidence and that the public convenience and necessity require and will require that the Commission issue an order herein amending said certificate of public convenience and necessity in manner and form as sought and prayed for in the Petition to amend, as amended.
Appellees appealed to the Chancery Court of the First Judicial District of Hinds County. The chancellor, after reviewing the record, wrote a memorandum opinion wherein he concurred with the commission in its finding that the order as affirmed in Mississippi Power Company, supra, was res judicata in this cause. He also concurred with the commission in its finding that the delay of the appellant in constructing the authorized generating plant and transmission lines was through no fault of appellant, *830 but was solely caused by appellee’s appeal. The chancellor then stated:
It is my opinion that the issue for trial before the Commission on this second petition was whether public necessity and convenience required the increased facilities or any part thereof, due to increased needs and demands, if any, and increased or decreased supply, if any, occurring since the order on the original petition.
The Commission proceeded to try the issue, but it is my humble judgment that the Commission committed reversible error when it refused to permit the respondents to cross examine petitioner’s witnesses and refused to permit the respondents’ witnesses to testify in defense of the issue and refused to receive in evidence the exhibits offered in defense of the issue.
Therefore the order of the Commission is affirmed as to continuing the order on the original petition in full force and effect, but it is reversed and remanded to the Commission for a new trial on the issue of whether or not public necessity and convenience requires the enlargement of the generating plant and transmission lines as prayed for by the petitioners, and to hear all competent evidence offered by both sides or parties to determine the issue. That is to say, follow the same procedure and rules of evidence they followed on a hearing of the first or original petition on its merits, and in accordance with our Supreme Court’s opinion affirming the original order, supra, and this opinion.
I hold as a matter of law that the respondents may offer evidence that the original facilities with the enlargement thereof are not a public necessity and convenience to show that the enlargement of the facilities is not a public necessity or convenience, but no further, as they cannot attack the facilities as first authorized.
A decree was entered in accordance with the chancellor’s opinion and from that decree this appeal is prosecuted. There is no cross appeal.
The principal question for determination is whether the chancellor was correct in holding that the commission was in error in rejecting the testimony offered by ap-pellees and in limiting the cross examination of appellant’s witnesses.
A determination of this question depends upon the scope of the issue to be tried by the commission on hearing the petition for an amended certificate. Appellant urges that the only issue to be tried by the commission was whether public convenience and necessity required the construction of the enlarged system instead of the facilities authorized in the original certificate. It is their contention that the commission properly limited the testimony to this issue and that the testimony offered by appellees was incompetent and irrelevant to the issue. On the other hand appellee urged that the chancellor correctly held that the commission was in error in rejecting the testimony offered by them to show that public convenience and necessity did not require the construction of any facilities by the appellant. In discussing this issue, the commission said:
23. Protestants made no serious effort to show that it would be in the public interest for Petitioner to build its system as originally certificated and add onto it rather than building the modified system with increased capacity as sought by the Petition. Rather Protestants seemed to advance the theory that since Petitioner is seeking permission to increase the capacity of its system in the manner set forth in the Petition, it has “abandoned” its original system, now proposes to build a “different” system, and it is therefore required to again prove public convenience and necessity for entering the generation and transmission field; and under this theory Protestants sought to bring up and litigate all over again the *831 basic issues involved in the original proceeding.
24. In the opinion of the Commission, those issues have been heretofore fully litigated and decided in favor of Petitioner and against Protestants; and that determination has been affirmed by the highest Court of our State. For all purposes of this proceeding, Petitioner is in the opinion of the Commission already in business in the generation and transmission field. If this view were not adopted, it would be easy to see how a Petitioner might file its petition, prove its case, be awarded a certificate to enter the field, be carried up on appeals by Protestants, win in the courts, find that its loads had increased in the interim; start all over again by petition to modify its facilities to provide for the increased loads (the Commission judicially knows loads have been for a long time increasing at the rate which doubles them at intervals of from seven to ten years) only to be met again by Protestants (who may have, in the meantime mended their ways and better prepared themselves to protest) and' if fortunate enough to win again, again start the journey on appeals; and so on ad infinitum', so that even the most deserving Petitioner, under the most impelling circumstances insofar as the public interest is concerned, might find itself continually applying for certificates but never able to enter the field. This sort of situation could approach the making of some utilities “captive customers” of others, a thing frowned upon by our Supreme Court in this very case (Mississippi Power Co., et al. v. South Mississippi Electric Power Association, et al., 123 [183] So.2d 163, 170); and certainly such a situation would, for obvious reasons (suppression of competition, protracted litigation, unnecessary expense, etc.) be inimicable to the public interest.
It appears that the commission and the chancellor placed different interpretations on what we said in our former opinion relative to the plea in bar. We said:
We are of the opinion that the issue raised by the plea in bar is not well taken as more than five years had elapsed from the time of filing the original application for the generating plant and the July 20,-1965, application seeking to enlarge it. The electric industry is fluid; demands for service are constantly fluctuating. These demands are closely related to economic or business trends, the prosperity or lack of it on the part of the consuming public, and many other factors; the daily, weekly, monthly and yearly electrical requirements, though they can be reasonably estimated, are constantly changing. We conclude, as did the Supreme Court of Kentucky, in Kentucky Utilities Co. v. Public Service Commission, Ky., 252 S.W.2d 885 (1952), that “The Public Service Commission necessarily must base its decision and actions on the economic conditions existing at the time a case is before it, and it is not in the public interest that a case be prolonged indefinitely by allowing a reconsideration whenever there is a fluctuation in price levels.” The issues raised by the plea in bar was not before the commission at the time of the hearing. Without deciding that the same is properly before us, we hold that the conditions existing in 1965 were not necessarily the conditions existing in 1960, the year in which the forecasts were made as to the electrical needs, and for this reason the plea in bar should be overruled and this appeal restricted to the economic conditions existing at the time the case was before the commission. The issues raised by the amended application are issues to be determined by the commission when properly presented to it. 254 Miss, at 766, 767, 183 So.2d at 166, 167.
It is apparent that we held that the filing of the petition for an amended certificate while the appeal was pending did not constitute an abandonment of the facilities authorized, so as to render the ap *832 peal moot. We noted that more than five years had elapsed since the filing of the original application until the time the amended certificate was filed and that demands for service in the electrical industry were constantly fluctuating. We stated that the issues raised by the amended application were to be determined by the commission. We did not attempt to define the scope of the commission’s inquiry on hearing the petition for an amended application. We certainly did not hold that the commission should again be required to determine whether public convenience and necessity required the construction of any generating facilities by appellant. We affirmed the granting of the certificate authorizing construction of the facilities proposed in the original application and left to the determination of the commission whether the certificate should be amended.
Although counsel in their excellent and exhaustive briefs cite numerous decisions by this Court and courts of other states, they do not cite any cases dealing with a factual situation similar to the one here, nor have we found any.
When we analyze the situation with which the commission was confronted, we find that it properly limited the issue to the question of whether public convenience and necessity required the construction of the enlarged facilities requested in the amended application rather than the facilities authorized in its order of March 7, 1963. After we had affirmed its action in granting the certificate of public convenience and necessity to appellant to construct the authorized facilities and the Supreme Court of the United States had refused to grant certiorari, neither the commission nor anyone else could prevent appellant from constructing those facilities and delivering the electricity generated to its member associations at the authorized delivery points. So actually all the commission could legally do was to either grant or refuse to grant the amended certificate. It could not take away appellant’s right to construct the facilities that it had authorized; it could not hold that by delay, appellant had abandoned its right to construct those facilities because appellant had been prevented from building them by the “stay order” granted at the appellee’s request. If it had denied the petition, appellant could have proceeded to construct the authorized facilities and then applied for an amended certificate to enlarge them. The proof shows that the facilities proposed in the amended application can be constructed for far less money than it would cost to construct the original facilities and then to add to them the necessary generating units and transmission lines to properly serve the needs of the four associations with which it holds contracts to supply wholesale electricity. Under these circumstances the proof offered by appellee was not relevant to the issue and the commission properly rejected it. Neither did it unduly restrict appellee’s right to cross examine appellant’s witnesses.
Appellee’s contention that the facilities proposed in the amended application are new and so different as to amount to an original application is without merit. The enlarged plant is to be constructed at the same location as the plant originally authorized. Its principal difference is that it will be capable of generating more electricity. It will still be a plant for the generating of electricity. Appellant was authorized to construct certain transmission lines by the original certificate to serve its member associations at certain delivery points. The amended application sought authority to build more miles of the same type transmission lines and to deliver electricity at more delivery points, but these lines and delivery points will serve the same associations it was authorized to serve in the original application except for one delivery point at Leakesville. Though the commission found this delivery point was not included in the original certificate, it was shown by the undisputed evidence that in the original proceeding appellant had proposed to pick tip this delivery point on or about July 1, 1965, being one year after the original start-up. This point is now served *833 by Mississippi Power Company, but the commission found that Mississippi Power Company directed no objection to the picking up of this delivery point as such. The commission found that it is an intermediate delivery point between Lucedale and Rocky Creek sub-stations in the extreme southeast portion of appellant’s proposed transmission system and the State Line sub-station located thirty miles or more to the north, and that without this delivery point there would be no intermediate delivery point on this line. The commission found that there was sufficient evidence to establish that public convenience and necessity required and will require that this delivery point be included in appellant’s overall system.
While it is true appellant had not at the time of the hearing of the amended application or at any other time generated any electricity or built any transmission lines, it held a certificate which authorized it to do so and we are of the opinion that for all practical purposes insofar as the hearing before the commission is concerned that they were in the same position as any other public utility seeking to increase its facilities to properly serve the needs of those it was authorized to serve.
The granting by the commission of the original and amended certificate of public convenience and necessity to South Mississippi Electric Power Association to generate and transmit electricity to its four member associations, amounts to no more than authorizing these associations to generate their own electricity. It is as we said in Mississippi Power Company, supra:
It is well to keep in mind that petitioner is a federation of nine power associations, respondents being four of them, so in essence petitioner is a corporation through which the associations will generate their own power as they have the statutory right to do under the Electric Power Association Act, Chapter 184 Mississippi Laws of 1936, Mississippi Code Annotated, section 5463 et seq. (1956). 254 Miss, at 773, 183 So.2d at 170.
We hold that the order of the Commission granting the amended certificate of convenience and necessity authorizing appellant to construct the enlarged facilities is supported by substantial evidence and is in keeping with the law. The Chancery Court was in error in reversing the order of the Commission and that part of its decree is reversed and judgment entered here reinstating and affirming the order of the Commission.
Reversed and judgment here for appellant.
All justices concur, except BRADY, who took no part.